IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JOHN F. CURRAN, III,

    Plaintiff,

v.                                                         No. 1:20-cv-01229-STA-jay

WEPFER MARINE INC.,
OKIE MOORE DIVING AND
MARINE SALVAGE, LLC., and
WESTERN RIVERS BOAT
MANAGEMENT, INC.,

    Defendants.

---

REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO DISMISS

---

On October 14, 2020, Plaintiff, John F. Curran, III ("Plaintiff"), filed a *pro se* complaint. (Docket Entry ("D.E.") 1.) This case has been referred to the United States Magistrate Judge for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.) Before the Court is Defendants, Wepfer Martin Services, Inc.'s ("Wepfer Marine") and Okie Moore Diving and Marin Salvage, LLC's ("Okie Moore"), motion to dismiss. (D.E. 20.) Plaintiff submitted a response in opposition. (D.E. 24.) Defendants filed a reply. (D.E. 25.)

I.     PROPOSED FINDINGS OF FACTS

Plaintiff initiated this action on October 14, 2020, seeking compensation from Defendants for "salvor services" pursuant to 46 U.S.C. § 80107. (D.E. 1.) Plaintiff first amended his pleading to "accurately reflect the corporate names" of Wepfer Marine and Okie Moore (D.E. 9; D.E.11) and then sought leave to file a second amended complaint (D.E. 34.) The Court construed

1

Plaintiff's motion as a request to add claims for (1) unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; (2) "back pay" under the FLSA; (3) discrimination/retaliation under the FLSA; and (4) discrimination/retaliation under the Seaman's Protection Act ("SPA"), 46 U.S.C. § 2114.  (D.E. 57 at PageID 297.)  On January 28, 2021, the Court granted Plaintiff leave to add claims for unpaid overtime under the FLSA and retaliation/discrimination under the FLSA based on his purported attempts to collect overtime wages.  (*Id.* at PageID 298, 300-03.) Plaintiff was denied leave to add claims for "back pay" under the FLSA, retaliation/discrimination under the FLSA based on his purported attempts to collect his "back pay increase," and retaliation/discrimination under the SPA.  (*Id.* at PageID 298-99, 301 n.5, 303-05.)

On February 9, 2021, Plaintiff filed his second amended complaint.  (D.E. 63.) Subsequently, Defendants filed a Motion to Strike Plaintiff's Second Amended Complaint, arguing that the pleading violates the Court's January 28 order and exceeds the scope of the amendment authorized.  (D.E. 72.)  The Magistrate Judge ruled that the following portions of the second amended complaint are struck: paragraphs 2, 3, 5, 13, 14, 19 through 25, 27 through 30, 46 through 49, 51 through 53, 55 through 57, the phrase "back pay increase: in 58, 74 through 79, 81, 82, 84 through 92, and the affidavit of Jason Strait.  (D.E. 82.)

Defendants Wepfer Marine and Okie Moore filed an Objection to and Appeal from Magistrate Judge's January 28, 2021, "Order Granting in Part and Denying in Part Plaintiff's Motion for Leave to Amend his Complaint" (D.E. 82) and disputed the Magistrate Judge's decision to permit Plaintiff to add claims pertaining to unpaid overtime under the FLSA and retaliation under the FLSA.  (D.E. 64.)  The Court denied Defendants' appeal.  (D.E. 84.)  After the January 28 order, Plaintiff's amended complaint asserts the following: (1) "salvage claim," under general maritime law and under 46 U.S.C. § 80107 and (2) unpaid overtime under the FLSA, under 29

2

U.S.C. § 207.[1]  (D.E. 63.)  Defendants' present motion to dismiss only seeks dismissal of the salvage claim and does not address unpaid overtime under the FLSA.

In his amended complaint, Plaintiff alleges that he was hired by Okie Moore on or about January 15, 2019, to serve as a salvor aboard the Stephen Foster to participate in an effort to raise and salvage equipment of a barge.  (*Id.*)  After the barge was successfully raised and during the transit back to the Okie Moore staging area, Plaintiff and Mitch Revette ("Revette") were instructed to release cables holding the various barges together.  (*Id.*)  At this time, the handle of the winch released immediately and struck Revette in the head.  (*Id.*)  Plaintiff began "immediate trauma care" to Rivette, "in accordance with US Coast Guard requirements for first aid."  (*Id.*)  Plaintiff instructed vessel master, Bruce Gibson, that Revette needed to be transported to a medical facility, at which time Gibson radioed the Coast Guard who made arrangements for an ambulance to meet them.  (*Id.*)  When the ambulance arrived, Plaintiff informed the crew of a suspected skull fracture.  (*Id.*)  Revette did suffer a skull fracture but was back to full duty within three months.  (*Id.*)

Plaintiff further alleges that his immediate care was recognized by senior management at Wepfer as being the reason that Revette returned to work so quickly.  (*Id.*)  Plaintiff was instructed to prepare a list of medical equipment for the Stephen Foster and was assigned additional duties as a safety officer for Okie Moore.  (*Id.*)  Such additional duties did not come with increased pay.  (*Id.*)  Additionally, Plaintiff alleges that the salvage manager, Mr. Gentry, accepted all reported hours without question, yet he did not receive compensation for 13.5 hours of overtime worked during the pay period of January 13 through January 26 of 2019 and for the .25 hours of overtime worked in which Plaintiff provided first aid to Revette.  (*Id.*)  Furthermore, Plaintiff alleges that

---

[1] Plaintiff did not plead facts concerning a claim of discrimination/retaliation under the FLSA in his amended complaint, although the January 28 order permitted him to add this claim.

3

Defendants did not pay Plaintiff for: 2.75 hours of overtime for medical services rendered beyond U.S. Coast Guard first aid; 15.5 hours of overtime during the pay period of January 27 through February 9 of 2019; .5 hours of overtime during the pay period of February 10 through February 23 of 2019; 36.5 hours of overtime during the pay period of February 24 through March 9 of 2019; 8.5 hours of overtime during the pay period of March 10 through March 23; 59 hours of overtime worked during the pay period of March 24 through April 7 of 2019; and 7 hours of overtime during the pay period of April 8 through April 21 of 2019.  (*Id.*)  Plaintiff asserts that he is owed overtime in the amount of $11,889.75 for performing duties agreed upon at the time of hire as well as an unspecified amount of overtime for performing additional duties that came during his employment. (*Id.*)  Finally, Plaintiff also asserts that he is owed overtime for the services provided to Revette. (*Id.*)

Furthermore, Plaintiff alleges that he was terminated by one or both of the Defendants after repeatedly seeking payment for overtime, although the reason for termination was listed as "missed a minimum of 4 full days during salvage operations" and "on 04/15/2019, he failed to follow a direct order from the Master of the Vessel." (*Id.*)  Plaintiff contends that he followed all orders and, prior to his termination, he had a positive work record as evidenced by receiving additional duties. (*Id.*)  After trying to find another job with other salvage companies, Plaintiff asserts that he was informed that he was not to be hired after these companies were contacted by Defendants. (*Id.*)

Plaintiff filed a complaint with the United States Department of Labor on or about February 7, 2020, before retaining counsel. (*Id.*)  He withdrew the complaint because, among other reasons, his counsel erroneously characterized Plaintiff's employment with Defendants as that of a seaman,

which he was not. (*Id.*) Additionally, Plaintiff alleges that Defendants replied with false assertions during the investigation with the United States Department of Labor. (*Id.*)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

Defendants Wepfer Marine and Okie Moore move to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) ("Rule"). (D.E. 20.) To survive a Rule 12(b)(6) dismissal, following the United States Supreme Court's opinions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to 'less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants,

5

however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading." ((internal quotation marks omitted)); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B. Whether Plaintiff Has Sufficiently Pleaded a Maritime Salvage Claim

The first issue is whether Plaintiff's complaint sufficiently pleads a maritime salvage claim. "Three elements are necessary to a valid salvage claim: 1. A marine peril. 2. Service voluntarily rendered when not required as an existing duty or from a special contract. 3. Success in whole or in part, or that the service rendered contributed to such success." *The Sabine*, 101 U.S. 384, 384 (1879). "Salvage is the compensation allowed to persons by whose voluntary assistance [to] a ship at sea or her cargo or both have been saved in whole or in part from impending sea peril, or in recovering such property from actual peril or loss, as in cases of shipwreck, derelict, or recapture." *Id.* General maritime law requires that a Court weigh six factors to determine the amount of a salvage award:

6

> (1.) The labor expended by the salvors in rendering the salvage service. (2.) The promptitude, skill, and energy displayed in rendering the service and saving the property. (3.) The value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed. (4.) The risk incurred by the salvors in securing the property from the impending peril. (5.) The value of the property saved. (6.) The degree of danger from which the property was rescued.

*The Blackwall*, 77 U.S. 1, 14 (1869). A salvage award is "limited by the value of the property saved." *Allseas Maritime, S.A. v. M/V Mimosa*, 812 F.2d 243, 246 (5th Cir. 1987).

Furthermore, maritime salvage law contains two principles concerning saving a life, known as "life-property salvage" and "independent life-property salvage." Where a person saves both life and property, a court may consider the act of saving a life to enhance the amount awarded as salvage for saving the property. *The Emblem*, 8 F. Cas. 611, 612 (D. Me. 1840); *The Plymouth Rock*, 9 F. 413, 418 (S.D.N.Y. 1881). Independent life-property salvage occurs where a set of salvors saves property while another set of salvors saves a life without involvement in saving the property; in this case, a court may allow those salvors who save a life to share in the property salvage award. *The Mulhouse*, 17 F. Cas. 962, 967-68 (S.D. Fla. 1859).

Here, Plaintiff seeks a salvage award for rendering first aid without alleging that adequate property was saved to state a claim for which relief can be granted. Plaintiff asserts that the "property" saved was "capital, or money" or "assets" that Defendants saved in "future peril." (D.E. 24.) Essentially, Plaintiff asserts, as Defendants acknowledge, that Defendants' property saved is the expense of liability for lengthy medical treatment for Rivette's injuries, had Plaintiff not rendered first aid that hypothetically minimized his medical expenses. (D.E. 24; D.E. 25.)

However, courts have not characterized "property" to include future liability. Moreover, courts have consistently rejected a claim for a salvage award based on saving only life. *See The Mulhouse* at 967; *The Plymouth* at 418 (noting that "the saving of a human life, dissociated from the saving of property is not a subject of salvage compensation, but left to the bounty of

7

individuals"); *The George Nicholaus*, 23 F. Cas. 333, 334 (E.D. La. 1853) ("The mere preservation of life, it is true, this court has no power of remunerating; it must be left to the bounty of individuals . . . ."); *The Emblem* at 612 (noting that the saving of life without saving property is a "common duty of humanity" in which a court is "not authorized to grant a reward directly"). Therefore, because Plaintiff has not pleaded property saved in tandem with rendering first aid, Plaintiff fails to state a claim for maritime salvage.

Where Plaintiff is alleging a claim pursuant to the Life Salvage Act, 46 U.S.C. § 80107, Plaintiff still fails to sufficiently state a claim. Under the Life Salvage Act, a claim exists "only when a third party seeks a property salvage award," and such a claim is "not an independent cause of action or the basis of a separate claim by the person involved in completing the [life-saving] services." *Sunglory Mar., Ltd. V. PHI, Inc.*, 212 F. Supp. 3d 618, 655 (E.D. La. 2016); *see also In re Yamashita-Shinnihon Kisen*, 305 F. Supp. 796, 800 (D. Or. 1969) ("[L]ife salvors are entitled to only a fair share of the compensation awarded to property salvors."). Additionally, the statute can have "no effect in a case where there was no association of effort or co-operation between those saving lives and those saving ship or cargo." *The Eastland*, 262 F. 535, 540 (N.D. Ill. 1919).

Here, Plaintiff does not allege that a third party is seeking a property salvage award from which his claim can derive. Additionally, Plaintiff does not sufficiently allege that his first aid is associated with the salvage of appropriate property. Because there is no cognizable claim for an award based on rendering first aid that saved Defendants' assets and potential liability, this Court finds that Plaintiff has failed to state a claim pursuant to Rule 12(b)(6).

### III. RECOMMENDATION

For the foregoing reasons, this Court recommends that the Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) be **GRANTED** and that Plaintiff's maritime

salvage claim be **DISMISSED**. If the Court adopts this report and recommendation, the only claim remaining will be Plaintiff's FLSA claim.[2]

Respectfully submitted this 17th day of November 2021.

s/ Jon A. York
**JON A. YORK**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE

**Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.**

---

[2] Defendants did not file a renewed motion to dismiss subsequent to Plaintiff's amended complaint addressing the added FLSA claim. Therefore, the Magistrate Judge does not address the merit of this claim for purposes of this report and recommendation.